(April 19, 2016)

■ HARVEY RUDMAN et al., Appellants, v CAROL GRAM DEANE et al., Respondents. [30 NYS3d 50]—

Order, Supreme Court, New York County (Shirley Werner Kornreich, J.), entered on or about July 30, 2014, and amended order, same court and Justice, entered September 24, 2014, which, to the extent appealed from as limited by the briefs, granted defendants' motion for partial summary judgment to the extent of declaring that the managing member of defendant/derivative plaintiff Starrett City Preservation LLC (Preservation) has the power to reallocate the sharing ratios of any member of said company once (i) nonparty Starrett City Associates LP (SCA) or its successors has distributed to Preservation all the distributions that SCA is required to make to its managing general partner and general partner under sections 3.02 and 3.03 of the SCA partnership agreement, (ii) Preservation has distributed to its members, in accordance with section 4.2 of its LLC agreement, any and all distributions it received from SCA, and (iii) such distributions by Preservation are $10 million or more, unanimously modified, on the law, to declare that Preservation's managing member has the power to reallocate the sharing ratios of any member once Preservation has distributed to its members, in accordance with section 4.2, at least $10 million, and otherwise affirmed, without costs.

"Ambiguity is determined within the four corners of the document" (*Brad H. v City of New York*, 17 NY3d 180, 186 [2011]). Hence, in deciding whether section 3.3 of Preservation's LLC agreement is ambiguous, we have not considered the extrinsic evidence that plaintiffs urge us to consider, such as the sixteenth amendment to SCA's partnership agreement, organizational charts and tax documents, and correspondence to SCA's limited partners.

"Ambiguity is present if language was written so imperfectly that it is susceptible to more than one reasonable interpretation" (*id.*). Section 3.3 is susceptible to only one reasonable interpretation—the one that defendants advanced on the motion.

The first sentence of section 3.3 states, "At any time after the Funding Event (as hereinafter defined), the Managing Member may . . . reallocate the Sharing Ratios of all Members in whatever amounts it deems . . . to be appropriate (including . . . assigning a Member a Sharing Ratio of zero)." The second sentence of section 3.3 defines "Funding Event" as "the distribution to Members, in accordance with their then current Sharing Ratios . . . , of at least $10,000,000 in aggregate distributions pursuant to Section 4.2 (iv)." Plaintiffs cannot

dispute that Preservation has distributed at least $10 million to its members pursuant to section 4.2 (iv). (It is true that plaintiff Harold Kuplesky's distributions were based on a sharing ratio of 3.49% rather than 11.63%. However, that particular reduction is not at issue on appeal.)

Plaintiffs rely on the last sentence of section 3.3, which says, "All Members acknowledge and agree that the Managing Member's reallocation power . . . is intended to facilitate providing a new management incentive program after the full distribution from the proceeds of a substantial refinancing pursuant to Section 3.02 or 3.03 of SCA's partnership agreement." However, this is merely a statement of *intention;* it does not actually require the full distribution of proceeds (*see Sengillo v Valeo Elec. Sys., Inc.*, 328 Fed Appx 39, 41-42 [2d Cir 2009]). We have modified the IAS court's declaration accordingly. Concur—Renwick, J.P., Andrias, Saxe and Moskowitz, JJ. ■